IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:21-MJ-178-DCK-1

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| DEREK ANTHONY RAWLINGS, JR, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** on Defendant's "Motion To Dismiss For A Sixth Amendment Speedy Trial Violation" (Document No. 21) filed July 25, 2022. Having carefully considered the motion and the record, the undersigned will deny the motion.

## BACKGROUND

The relevant background to the instant motion is set forth in the Court's July 26, 2022 Order denying Defendant's Motion to Dismiss the indictment for a statutory violation of the Speedy Trial Act. See (Document Nos. 14, 22). As stated in the undersigned's July 26, 2022 Order,

> Defendant was charged by Criminal Complaint on July 26, 2021 for violation of 49 U.S.C. § 46506(2). See (Document No. 1). According to the Affidavit attached to the Criminal Complaint, Defendant "exposed his penis and masturbated in view of a passenger" while on board a commercial flight traveling from Newark, New Jersey to Charlotte, North Carolina on May 3, 2021. (Document No. 1-1, p. 1). Defendant was arrested on August 2, 2021 in the Western District of Tennessee[, and he]…made his initial appearance before the undersigned in this Court on August 23, 2021. Defendant was released with modified conditions, including that his movements were restricted to the Western District of North Carolina, the Western District of Tennessee, and the Northern District of Mississippi and that he not fly commercially while the case was ongoing. See (Document No. 6). Defendant also

consented to trial before a U.S. Magistrate Judge on August 23, 2021. (Document No. 7).

(Document No. 22, pp. 1-2). No activity occurred in the case nor were any filings made between September 2021 and Defendant's filing of his first motion to dismiss on statutory grounds in late June 2022, as seen on the docket report. Nonetheless, as the attachments to the Government's response to Defendant's instant motion to dismiss demonstrate, the Clerk's Office reached out to the parties upon multiple occasions (in December 2021, January 2022, and June 2022) to check in about the status of the case. See (Document No. 26-1). In December 2021 and in January 2022, the parties seemed to indicate that the Defendant was likely to plead, and the case would be transferred to the Western District of Tennessee. (Document No. 26-1, pp. 1, 3, 4, 6, 7). Defendant made no response (that the undersigned can see) to the Clerk's Office's most recent check-in email on June 21, 2022, but instead filed his motion to dismiss on statutory grounds a few days later. See (Document Nos. 14, 26-1).

On July 26, 2022, the undersigned issued an Order denying Defendant's Motion to Dismiss based on statutory violation of the Speedy Trial Act, concluding that the Speedy Trial Act does not apply to Class B misdemeanors.[1] See (Document Nos. 14, 22). Notably, also on July 26, 2022, the undersigned approved the issuance of a summons to Defendant for his appearance before this Court at a bond revocation hearing. See (Document No. 23). The bond violation hearing is currently set for August 18, 2022. See (Document No. 30).

Defendant filed the pending "Motion To Dismiss For A Sixth Amendment Speedy Trial Violation" (Document No. 21) on July 25, 2022. The "Government's Response In Opposition To Defendant's Motion To Dismiss For A Sixth Amendment Speedy Trial Violation" (Document No.

---

[1] Defendant's offense – his alleged violation of 49 U.S.C. § 46506(2) – is a Class B misdemeanor. See (Document No. 22, p. 3).

2

26) was filed August 3, 2022.  Defendant filed his "Reply To Government's Opposition To Motion To Dismiss For A Sixth Amendment Speedy Trial Violation" (Document No. 31) on August 9, 2022.

The pending motion is now ripe for review and disposition.

## ANALYSIS

Pursuant to the Sixth Amendment of the United States Constitution, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."  U.S. CONST. amend. VI.  First, though, a criminal defendant "must show [] that the Amendment's protections have been triggered by 'arrest, indictment, or other official accusation,'" for otherwise, the Sixth Amendment's protections do not apply.  United States v. Woolfolk, 399 F.3d 590, 597 (4th Cir. 2005) (quoting United States v. Thomas, 55 F.3d 144, (4th Cir. 1995)).  "The Supreme Court has counseled that 'postaccusation delay [is] presumptively prejudicial at least as it approaches one year.'"  Woolfolk, 399 F.3d at 597 (quoting Doggett v. United States, 505 U.S. 647, 652, n.1 (1992)).  Moreover, only *if* "there is some delay which is presumptively prejudicial" – around one year – will a district court undertake an inquiry into "[a] balancing test [composed of]…four [] factors" that aid in the analysis of whether the speedy trial right was violated.  Barker v. Wingo, 407 U.S. 514, 530 (1972).  "The length of the delay," therefore, "is to some extent a triggering mechanism" for application of the balancing test.  Id.

The four factors that a district court must balance in the constitutional speedy trial context include:  (1) the "length of the delay;"  (2) "the reason for the delay;"  (3) "the defendant's assertion of his right;"  and (4) "prejudice to the defendant."  Id.  The undersigned will conduct analysis on each of the four factors below and determine whether, on balance, Defendant's constitutional speedy trial right has been violated.  Importantly, the Supreme Court has highlighted the gravity

3

of the task: "[t]he amorphous quality of the [speedy trial] right [] leads to the unsatisfactorily severe remedy of dismissal of the indictment when the right has been deprived." Id. at 522. "This is indeed a serious consequence because it means that a defendant who may be guilty of a serious crime will go free, without having been tried." Id.

1. **Length of the Delay**

As stated, the delay's length acts as a triggering mechanism that initiates the Court's analysis into the four Barker factors. Id. at 530. Here, approximately one year has passed since the Government filed a Criminal Complaint charging Mr. Rawlings and Defendant's initial appearance before this Court in July and August of 2021, respectively, and the undersigned's current consideration of Defendant's motion to dismiss. Importantly, "'presumptive prejudice' does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry." Doggett, 505 U.S. at 652, n.1. Although "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge," the tolerable length of delay "is necessarily dependent upon the peculiar circumstances of the case." Barker, 407 U.S. at 530.

Here, the undersigned finds that approximately one year has passed since the inception of this case – thus triggering the Court's requisite examination of the remaining Barker factors since one year is "presumptively prejudicial." Woolfolk, 399 F.3d at 597. That analysis will follow below. Still, a year's delay for a misdemeanor offense is long; the undersigned finds that the delay alone weighs against the Government. The length of the delay, though, is but one factor in the Barker analysis, and as seen below, the circumstances of this case tell a more complicated story.

2. **Reason for the Delay**

4

Case 3:21-mj-00178-DCK   Document 32   Filed 08/11/22   Page 4 of 11

A guiding principle to the constitutional speedy trial right is that "[a] defendant has no duty to bring himself to trial; the State has that duty." Barker, 407 U.S. at 527. Thus, the focus of this factor is "the intent of the prosecution" – the Court must evaluate whether the reason for the trial's delay is "valid, improper, or neutral" with respect to the Government's rationale. United States v. Hall, 551 F.3d 257, 272 (4th Cir. 2009). Indeed, "different weights should be assigned to different reasons." Barker, 407 U.S. at 531. Any "deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." Id. But, "[a] more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless considered since the ultimate responsibility for such circumstances must rest with the government." Id. And, if there is any reason such as a key individual being unavailable for testimony at trial on a particular date that causes delay, a court should view that reason as valid. Id.

Defendant argues that "there does not appear to be either malicious delay or justified delay." (Document No. 21, p. 5). He argues that his case "appears to simply have been forgotten or not prioritized." Id. The Government, on the other hand, paints a more complete picture of what transpired over the course of the past year, in large part explaining the trial's delay. Notably, the Defendant's motion does not include any information about such background efforts not seen on the docket report.[2] Indeed, the Government attaches an email exchange between the Clerk's Office, the Government, and Defendant's counsel that spans from December 2021 through June 2022. See (Document No. 26-1). As the Government explains in its response, it appears that the parties were working towards "the negotiation of a pretrial resolution." (Document No. 26, p. 4). That resolution would "involve[] Rawlings pleading guilty [in the Western District of North

---

[2] However, as subsequently explained, Defendant does include some additional background about the plea negotiations in his reply brief. See (Document No. 31, pp. 2-4).

5

Carolina] and then transferring his case to the Western District of Tennessee, where he resides." Id. at p. 2. Indeed, in response to emails from the Clerk's Office in both December 2021 and January 2022, the Government indicated that the parties were still in the process of working towards pretrial resolution. See (Document No. 26-1, pp. 1, 4).

Defendant in his reply contends that while counsel for both sides may have been *discussing* a plea agreement, the Government did not actually send defense counsel a written plea offer until July 1, 2022. See (Document No. 31, p. 4); (Document No. 31-1). Thus, Defendant argues, "[c]ontrary to the government's assertions, the delay in Mr. Rawlings' prosecution was not from plea bargaining, but [rather] the government's neglect and dilatoriness." (Document No. 31, p. 5). However, it is not evident to the undersigned from any of the briefing or attachments that Defendant ever provided this context to the Court when the Clerk emailed counsel to check in about the status of the case. Indeed, instead of responding to the Clerk's email checking in about the case's status on June 21, 2022, Defendant filed its motion to dismiss on statutory grounds (which the Court denied) just days later on June 24, 2022. See (Document No. 26-1, p. 8); see also (Document No. 14).

Defendant contends that "delay attendant with plea bargaining is weighed against the government," citing a case from the Second Circuit as support. (Document No. 31, pp. 2-3) (citing United States v. Tigano, 880 F.3d 602, 615 (2d Cir. 2018)). In that case, the Second Circuit held that "time spent in plea bargaining is a gamble taken by the government regarding the defendant's speedy trial rights and is properly counted against the government." Tigano, 880 F.3d at 615. Defendant further attempts to analogize Tigano to the instant case by highlighting that in Tigano (as in the instant case), the Second Circuit frowned upon the fact that "it took the government nearly a year to actually present a written plea offer." Id.; see (Document No. 31, p. 3). However,

6

Defendant fails to recognize that important distinctions exist between the underlying facts in Tigano and the instant case. In Tigano, the defendant endured "nearly seven years of pretrial detention." 880 F.3d at 606. First, a year has passed in the instant case – far less than the *seven* years in the Tigano case. Furthermore, the prejudice to the defendant in the Tigano case was undoubtedly greater than here – the defendant in that case was incarcerated while awaiting trial, while here, Defendant is out on bond. Id. Moreover, Tigano does not counsel that a lengthy time spent in plea negotiations without a written plea offer is automatically dispositive of the Barker inquiry. Nor is Tigano controlling precedent in the Fourth Circuit – and, the undersigned is not aware of any court within the Fourth Circuit that has cited Tigano. Instead, when the Government proffers a rationale for the delay such as plea negotiations, that is *one factor* out of four factors that a court must consider in balancing the Barker factors.

The Court finds the Government's explanation that the trial was delayed because of efforts to negotiate a pretrial resolution valid and sincere. Moreover, the Government's argument that "[D]efendant is not an uninterested onlooker who lacks any responsibility for how his case proceeds" is persuasive. (Document No. 26, p. 4). If the case was actually "forgotten" as Defendant contends, both parties practically bear some responsibility for such negligence. (Document No. 21, p. 5). Of course, the Court recognizes that the law states that the ultimate responsibility for "negligence" in bringing a case to trial rests with the Government. Barker, 407 U.S. at 531. Indeed, the Court finds that the Government did take an unusually long time to send a written plea agreement to Defendant. But, it is telling that Defendant made no attempt to assert his speedy trial right until approximately ten months following his initial appearance in August 2021, and he filed his motion to dismiss on statutory grounds mere days after receiving an email from the Clerk's Office checking in. See (Document No. 14). Furthermore, Defendant has not

7

Case 3:21-mj-00178-DCK    Document 32    Filed 08/11/22    Page 7 of 11

provided any indication to the Court that defense counsel was making efforts to nudge the Government to provide a written plea agreement.[3] Defendant has also not alleged any improper motives on the part of the prosecution in terms of deliberate attempts to weaken the defense by delaying the trial. In the absence of any malice, and given the background plea negotiation context, the Court finds that this factor—while a close call—is neutral.

### 3. Defendant's Assertion of the Right

The Supreme Court "emphasize[s] that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." Barker, 407 U.S. at 532. Defendant conclusorily asserts that he "has asserted his speedy trial right," and therefore, "this factor should weigh against the Government." (Document No. 21, p. 7). Still, as the Government persuasively highlights, "Rawlings asserted his speedy trial right for the first time in his June 24, 2022 Motion to Dismiss, filed almost ten months after his initial appearance." (Document No. 26, p. 4). Prior to "this time, despite communications with the government and the Court, he had not expressed any interest in going to trial and did not demand that his charge be resolved in an expedited fashion." Id. The undersigned therefore concludes that this third factor weighs against the Defendant – waiting ten months after initial appearance to complain that one's speedy trial rights have been violated certainly does not indicate great concern on Defendant's part throughout the process that either the prosecution or the Government were not prioritizing his case.

### 4. Prejudice to the Defendant

---

[3] Indeed, in the January communication between the Government and defense counsel, the next step (that the Government may have been waiting for) seemed to be that defense counsel was going to reach out to Defendant about pleading guilty. (Document No. 26-1, p. 4). Additionally, the Government was going to send a factual basis to Defendant. Id. at p. 6. Defendant has not provided any other communications between defense counsel and the Government to demonstrate that the Government was intentionally dragging its feet on providing a written plea agreement to Defendant. Of course, both sides should have been checking in with each other more frequently, but Defendant's complaints about the case not being prioritized certainly aren't entirely attributable to the Government.

The Court evaluates three sub-factors to determine whether prejudice to the Defendant is present – (1) prevention of "oppressive pretrial incarceration;" (2) minimization of "anxiety and concern of the accused;" and (3) limitation of "the possibility that the defense will be impaired." Barker, 407 U.S. at 532. On the first factor, Defendant was not detained pending trial – indeed, he was released on bond with conditions following his initial appearance in August 2021. See (Document No. 6).

Further, although Defendant generally complains about the "anxiety and stress of a pending criminal prosecution," while such concerns are valid in the general sense, the Court finds such concerns less meaningful here in light of Defendant's alleged bond violation, the subject of the Court's upcoming bond revocation hearing on August 18, 2022. See (Document No. 30). Moreover, while Defendant's pretrial release was not completely without conditions – he indicates that his movements were restricted, he had to report to a probation officer, he was banned from flying commercially, and his attorney had to talk to him remotely on account of his residence in Memphis and his lawyer's location in Charlotte – that does not automatically suggest that the prejudice was so great such that this factor weighs in his favor. (Document No. 21, p. 8). Indeed, many of these conditions are not much more burdensome than those that any criminal defendant awaiting trial must face – indeed, Defendant does not persuasively argue that he faced "'any restraint on liberty, disruption of employment, strain on financial resources, [or] exposure to public obloquy' that was greater than that faced by 'anyone openly subject to criminal investigation.'" Hall, 551 F.3d at 272 (quoting United States v. MacDonald, 456 U.S. 1, 9 (1982)). Defendant does not help his own argument about the pending trial's impact on his reputation when he has allegedly violated the conditions of his pretrial release. See (Document No. 23).

Finally, Defendant argues that preparation of his defense has been impaired by the delay because the passage of time "may lead to memory distortions or otherwise obfuscate Mr. Rawlings['] ability to cross-examine his accusers." (Document No. 21, p. 9). But, his statement that he "has shown both actual and presumed prejudice" is incorrect. (Document No. 31, p. 8). Defendant mischaracterizes the Supreme Court's holding in Doggett v. United States, which was indeed clarified by the Fourth Circuit as subsequently explained. 505 U.S. 647 (1992). Although Defendant highlights the Supreme Court's statement in Doggett that "affirmative proof of particularized prejudice is not essential to every speedy trial claim," Mr. Rawlings' case is one of those instances in which Doggett would counsel that particularized prejudice *is* necessary to prevail on this prong. (Document No. 31, p. 8) (citing 505 U.S. at 655).

In Doggett, prejudice was presumed without a particularized showing because eight and a half years had passed "between [the defendant's] indictment and arrest." 505 U.S. at 657. And, to successfully demonstrate prejudice on the fourth Barker prong, "negligence unaccompanied by particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice." Id.; see also United States v. Villalobos, 560 F. App'x 122, 127 (3rd Cir. 2014) ("concerning impairment of a defense, such prejudice can either be shown in a particularized fashion, or presumed due to an *extreme* pre-trial delay" (emphasis added)). Here, that is not the case – approximately twelve months have elapsed, the bare minimum to even trigger the Barker inquiry. Indeed, the Fourth Circuit has explained that even a 15-month delay does "not excuse a defendant from showing actual prejudice." United States v. Lloyd, 645 F. App'x 273, 278 (4th Cir. 2016). While Defendant here has "merely contend[ed] generally that the delay affect[s] the memories…of witnesses," he has not "specifically identify[ed] [] witnesses that are…unavailable or discuss[ed] how the allegedly forgotten information could have impaired his defense." United

10

States v. Smith, 1994 WL 481927, at *2 (4th Cir. 1994); see (Document No. 21, pp. 8-9). Ultimately, the Court finds that this factor cuts in favor of the Government.

## CONCLUSION

On balance, the undersigned finds that Defendant's motion to dismiss on constitutional speedy trial grounds should be denied. The Barker factors point to a close, but assured outcome for the Government: while the length of the delay certainly weighs in favor of Defendant and the reason for the delay is neutral, Defendant's belated assertion of his right and the prejudice prong both cut in favor of the Government. Balancing these factors, the Court finds that Defendant's constitutional speedy trial right was not violated.

**IT IS, THEREFORE, ORDERED** that Defendant's "Motion To Dismiss For A Sixth Amendment Speedy Trial Violation" (Document No. 21) is **DENIED**.

**SO ORDERED**.  Signed: August 10, 2022

David C. Keesler
United States Magistrate Judge